IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CITY OF GREENSBURG,

    Plaintiff,

v.

Edward WISNESKI et al.,

    Defendants.

Civil Action No. 14-1345

MEMORANDUM OPINION

Conti, Chief District Judge

## I. Introduction

This memorandum opinion addresses the motion to remand to state court (ECF No. 8) filed by plaintiff City of Greensburg ("Greensburg"). Greensburg filed a three-count complaint in state court against defendants Edward Wisneski ("Wisneski") and his counsel, Robert M. Owsiany ("Owsiany" and together with Wisneski "Defendants"). That lawsuit was timely removed by Defendants to this court. Greensburg asserts three state-law claims relating to an unsuccessful lawsuit brought by Wisneski against Greensburg in this court. The state-law claims are abuse of process (count 1); wrongful use of civil proceedings under 42 Pa. Cons. Stat. §§ 8351–54, sometimes called the Dragonetti Act (count 2); and civil conspiracy (count 3). In the unsuccessful federal lawsuit, Wisneski asserted only federal civil rights claims against Greensburg. *Wisneski v. Denning*, Civil No. 12-864. Wisneski had sued Greensburg and individual Greensburg police officers for excessive use of force and for failure to adequately train police officers. Owsiany represented Wisneski in that federal lawsuit. The federal district court granted a motion for summary judgment filed by Greensburg and the other defendants and entered judgment for them and against Wisneski. In this case, Greensburg asserts, among other things, that the underlying lawsuit was frivolous and brought for the improper purpose of "intimidating" Greensburg and seeking a

1

"ransom" settlement. (Compl. ¶¶ 45–46.) Greensburg seeks money damages including the recovery of attorney's fees and costs expended defending the underlying suit.

Greensburg moved to remand the case to state court. On December 9, 2014, the court held a hearing on this motion.

## II. Legal Standards for Removal and Remand

A defendant may remove a civil action from state court to federal district court when the federal court has original jurisdiction over the action and removal is not expressly prohibited by statute. 28 U.S.C. § 1441. The removing party has the "heavy burden of showing that at all stages of the litigation the case is properly before the federal court." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the court must remand the case to state court. 28 U.S.C. § 1447(c). "Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown*, 575 F.3d at 326.

## III. Discussion

The parties agree that the court cannot exercise diversity jurisdiction over this case. Defendants claim federal-question jurisdiction as the basis for removal. District courts have federal-question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under § 1331, a civil action can "aris[e] under" federal law in two ways. Primarily, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). The "vast bulk" of federal-question suits fall under this rule. *Id.* The Supreme Court has also identified a "slim category" of state-law causes of action that nevertheless give rise to federal-question jurisdiction. *Id.* at 1065.

In determining whether a case arises under federal law for the purpose of removal, courts follow the "'well-pleaded complaint' rule." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). Under this doctrine, "a

defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Id.* at 10. In this case, the three claims in Greensburg's complaint arise under state law. The abuse of process and civil conspiracy claims are raised under Pennsylvania common law. The Dragonetti Act count is a Pennsylvania statutory claim. On the face of the complaint, there are no claims created by federal law.

Whether this case falls into the "slim category" of state-law claims that give rise to federal jurisdiction is a difficult question. The Supreme Court acknowledged a lack of clarity about this issue and compared the relevant case law to a Jackson Pollock painting. *Gunn*, 133 S. Ct. at 1065. The two most recent Supreme Court decisions addressing this issue, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and *Gunn*, have brought more definition to the contours of this category. For federal jurisdiction to lie over a state-law cause of action, the state-law claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. This means that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. These factors will be addressed in turn.

### A. *Necessarily Raised*

A federal issue is necessarily raised "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd.*, 463 U.S. at 9. In *Gunn*, the Supreme Court found that a state-law legal malpractice claim necessarily raised a federal issue. *Gunn*, 133 S. Ct. at 1065. The underlying suit was a federal patent infringement case. In order to prevail in the malpractice suit, the plaintiff had to prove that the attorney's breach was the proximate cause of the

3

plaintiff's injury. This "case within a case" analysis would require the application of federal patent law to determine whether the plaintiff would have prevailed in the patent infringement case had the attorney not breached a duty owed to the plaintiff. *Id.*

The Court of Appeals for the Third Circuit analyzed the "necessarily raised" factor in a recent precedential decision, *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158 (3d Cir. 2014). In that case, the plaintiffs filed a ten-count complaint in New Jersey state court alleging that the defendants manipulated the share price of a stock by engaging in abusive short selling practices. *Id.* at 160. All ten claims were asserted under New Jersey law, but the complaint repeatedly invoked the requirements of SEC Regulation SHO, 17 C.F.R. §§ 242.200–.204, which regulates short sales. *Manning*, 772 F.3d at 161 ("There is no question that Plaintiffs assert in their Amended Complaint, both expressly and by implication, that Defendants repeatedly violated federal law."). The defendants removed the case to federal court, and the district court denied the plaintiffs' motion to remand.

The Third Circuit Court of Appeals reversed, finding no necessarily raised federal issue. The district court found that the state-law claims were predicated on a violation of Regulation SHO. The court of appeals "conclude[d] it was improper for the District Court to foreclose the possibility that particular state causes of action could permit recovery solely under state law." *Id.* at 163. Regulation SHO was not an element of any of the plaintiffs' claims. *Id.* Even if the plaintiffs' claims "were *partially* predicated on federal law, federal law would still not be necessarily raised." *Id.* at 164. "'[A] claim supported by alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each.'" *Id.* (alterations in original) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)).

Under the analysis set forth in *Gunn* and *Manning*, the court must look at the elements of the state-law causes of action. As noted, there are three state-law claims

asserted in Greensburg's complaint: wrongful use of civil proceedings, abuse of process, and civil conspiracy.

   1. *Wrongful Use of Civil Proceedings*

To establish the wrongful use of civil proceedings, a plaintiff must prove that (1) the underlying proceedings were terminated in the plaintiff's favor, (2) the defendant caused the proceeding to be instituted without probable cause, and (3) the proceedings were instituted primarily for an improper cause. *Sabella v. Estate of Milides*, 992 A.2d 180, 188 (Pa. Super. Ct. 2010); *see* 42 PA. CONS. STAT. § 8354. Probable cause is defined by statute.

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:
>
> (1) reasonably believes that under those facts the claim may be valid under the existing or developing law;
>
> (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
>
> (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 PA. CONS. STAT. § 8352. As applied to this case, the second and third subdivisions in the probable cause statute do not implicate federal law, but the first subdivision does. For a plaintiff to prevail on a claim of wrongful use of civil proceedings, the plaintiff must show that the defendant did not reasonably believe the claim was valid under current or developing law. Because reasonable belief is an objective standard, the strength of the underlying claim is a necessarily raised issue. Since the underlying claims in this case were alleged civil rights violations under federal law, the complaint

necessarily raises issues of federal law. Greensburg's complaint asserts, among other things, that the claims in the underlying federal lawsuit were barred by the decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), and "were groundless under existing or developing law." (Compl. ¶ 43.)

### 2. Abuse of Process

Greensburg's claim for abuse of process does not implicate federal law. To establish a claim for abuse of process, the plaintiff must show

> "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. This tort differs from that of wrongful use of civil proceedings in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial."

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)). Since the existence of probable cause is immaterial in a claim for abuse of process, analysis of this claim does not raise any issue of federal law.

### 3. Civil Conspiracy

The elements of civil conspiracy are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008). None of these elements implicate federal law. The only count that raises an issue of federal law is the claim for wrongful use of civil proceedings.

## B. Disputed and Federal-State Balance

The second and fourth of the factors under *Grable* and *Gunn* are not at issue here. The necessary federal issue—whether Defendants reasonably believed the underlying federal civil rights claims were valid under existing or developing law—is disputed. Federal determination of this issue would not disrupt any "federal-state

balance approved by Congress." While Pennsylvania has an interest in making sure its citizens are not sued for an improper purpose in federal court, the federal courts have at least an equal interest in preventing improper, frivolous litigation. The court is unaware of any federal-state balance that would be affected by federal jurisdiction over this case. The remaining factor is whether the disputed federal issue is "substantial."

### C. *Substantial*

#### 1. *General Framework*

In *Gunn*, the Court explained that the substantiality inquiry looks to "the importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. The Court did not find a substantial federal issue in *Gunn*. Although the case-within-a-case requirement of a malpractice suit presented a disputed federal issue, the issue was not important to the federal system as a whole. The Court explained that the federal question was "posed in a merely hypothetical sense." *Gunn*, 133 S. Ct. at 1067. A malpractice suit is "backward looking" and a determination that the plaintiff in the underlying patent litigation would have prevailed but for the malpractice of counsel would have no effect on the "real-world" validity of the patent and would not undermine the uniform body of patent law. *Id.*

The issue whether the particular Defendants in this case had a reasonable belief that Wisneski's federal claims were valid under existing or developing federal law is fact intensive. The analysis of this question requires an application of the facts in underlying case to an established body of federal law. A fact-bound inquiry is less likely to raise a substantial federal issue than a purely legal issue. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006). Due to the fact-intensive analysis required, resolution of this issue would not "be controlling in numerous other cases" and is not important to the federal system as a whole. *Id.* at 700.

The Supreme Court has recognized the presence of a substantial federal issue in cases where the government has a special interest in the litigation being resolved in a

7

federal forum. *See, e.g., Grable*, 545 U.S. at 315; *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921). In *Grable*, the plaintiff, whose property was seized and sold by the Internal Revenue Service, brought a state-law quiet title action against the purchaser of the property. The plaintiff asserted the Internal Revenue Service failed to provide adequate notice before it seized the plaintiff's property. Because the government had a "strong interest" in a uniform interpretation of the Internal Revenue Code—particularly as applied to the government's ability to satisfy delinquent tax debts—the government had "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Grable*, 545 U.S. at 315. In *Smith*, the "classic example" of a state-law claim giving rise to federal-question jurisdiction, *Grable*, 545 U.S. at 312, a shareholder sued under state law to enjoin a corporation from purchasing certain bonds issued by the United States on the ground that the issuance of the bonds was unconstitutional. *Smith*, 255 U.S. at 195. The case warranted federal-question jurisdiction because the central contested issue was the constitutionality of an act of Congress. *Grable*, 545 U.S. at 312 (discussing *Smith*). This case, in contrast, does not on the face of the complaint implicate a strong governmental interest in the availability of a federal forum.

In *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002), a divided panel of the Court of Appeals for the Third Circuit found that a suit alleging abuse of process and violation of the Dragonetti Act was properly removed to federal court. Whether the defendants' actions in the underlying suit were tortious involved an interpretation of Rule B of the Supplemental Rules for Admiralty and Maritime Claims. The court of appeals found this to be a "substantial question of federal law" that involved "an apparent clash between a procedural rule and a contrary holding by [the] United States Court of Appeals [for the Eleventh Circuit]." *Id.* at 391. "Where a plaintiff's complaint requires the juxtaposition of a court of appeals decision and an apparently conflicting procedural rule, the federal courts may properly claim jurisdiction." *Id.* The instant case does not involve a conflict in federal law. Summary

8

judgment was granted in the underlying suit in part because of the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), and in part because the evidence of record did not create a genuine issue of material fact. These doctrines, developed and announced by the Supreme Court, do not involve any conflicts or split of authority. The kind of substantial federal question present in *Higgins* is not raised on the face of the complaint in this case.

    2. *Preemption*

Defendants argue that Greensburg's claims are preempted by federal law, specifically 42 U.S.C. § 1988(b), which provides that a defendant may recover attorney's fees from a civil rights plaintiff if the plaintiff's claim was frivolous, and Rule 11 of the Federal Rules of Civil Procedure, which permits parties to seek sanctions against opposing parties making frivolous claims. Defendants assert that "§ 1988 combined with Rule 11 provide Greensburg with the exclusive remedy for abusive litigation under these facts." (ECF No. 13, at 7.) During oral argument, Defendants argued that resolution of the preemption issue is a substantial federal issue.

The preemption issue, however, is not necessarily raised by Greensburg's complaint. Under the well-pleaded complaint rule, a defense of federal preemption is generally insufficient to confer federal jurisdiction over state-law claims. "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metro. Life Ins. v. Taylor*, 481 U.S 58, 63 (1987). "Even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *Id.* at 66.

The well-pleaded complaint rule has one exception. If Congress has "completely" preempted a particular area of law, then "any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64. "Complete pre-emption" is a "limited exception to the well-pleaded complaint rule." *Metro. Edison Co. v. Pa. Pub.*

*Util. Comm'n*, 767 F.3d 355, 363 (3d Cir. 2014). The name "complete preemption" is misleading. Unlike "ordinary" or "conflict" preemption, under which federal law provides a defense to a state-law claim, complete preemption "is actually a doctrine of subject matter jurisdiction." 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure § 3566 (2008). As explained by Wright, Miller, Cooper, and Freer, complete preemption

> is based on the theory that some federal statutes have such an overwhelming preemptive effect that they do more than merely provide a defense to a state-law claim. Rather, they take over an entire substantive subject matter area, supplant state law, and make the area inherently federal. Any claim asserted in that substantive area—even a claim ostensibly based upon state law—is thus federal and the claim necessarily arises under federal law and invokes federal question jurisdiction.

*Id.* The scope of the complete preemption doctrine is limited. The Supreme Court has recognized only four instances where the complete preemption doctrine applies: (1) § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; (2) § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a); (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86; and (4) certain Indian tribal claims. *Id.*; *see Metro. Edison*, 767 F.3d at 363 n.35.

With respect to § 301 of the Labor Management Relations Act, the Supreme Court found that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd.*, 463 U.S. at 23 (internal quotation marks omitted). In finding that § 502(a) of ERISA completely preempts state law, the Supreme Court noted that the language of that statute mirrored the operable language of § 301 of the Labor Management Relations Act. *Taylor*, 481 U.S. at 66. The Court quoted from the Congressional Record where the sponsoring senator stated that it was intended for all

actions for recovery of retirement benefits to be regarded as arising under federal law. *Id.*

The text of 42 U.S.C. § 1988(b) does not contain the kind of powerful language showing Congress intended that a preemption defense to the recovery of damages stemming from abusive or frivolous civil rights lawsuits is necessarily a federal claim implicit on the face of a complaint. Defendants cited no decision, and the court is not aware of any decision, in which a court found that the preemptive nature of a claim under 42 U.S.C. § 1988(b) could only be raised in a federal forum. The purpose of the Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. No. 94-559, 90 Stat. 2641 (codified as amended at 42 U.S.C. § 1988(b)), was to encourage enforcement of civil rights actions by "private attorneys general" and to correct "anomalous gaps" in civil rights laws where attorney's fees were recoverable under some causes of action but not others. S. REP. NO. 94-1011, at 3–4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910–11. The Senate report explained that the "bill creates no startling new remedy— it only meets the technical requirements that the Supreme Court has laid down if the Federal courts are to continue the practice of awarding attorneys' fees." *Id.* at 6, 1976 U.S.C.C.A.N. at 5913. Given the extremely limited nature of complete preemption and the lack of any congressional directive about federal jurisdiction in the context of this case, the court cannot find that the defense of preemption with respect to 42 U.S.C. § 1988(b) is "necessarily federal in character," thereby creating federal jurisdiction. *Taylor*, 481 U.S at 63–64.

Defendants cited *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299–300 (1988), for the proposition that Congress may legislate "in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law." (ECF No. 13, at 7.) This kind of preemption is known as field preemption. Field preemption is a type of "ordinary" preemption distinct from complete preemption. *Metro. Edison*, 767 F.3d at 362–63 ("'[W]e may not conflate "complete preemption" with … "ordinary" pre-emption. While these two concepts are

11

linguistically related, they are not as close kin jurisprudentially as their names might suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim.'" (quoting *Lontz v. Tharp*, 412 F.3d 435, 440 (4th Cir. 2005))). *Schneidewind* and other field preemption cases are inapposite to the jurisdictional question at issue in this case. In *East-Bibb Twiggs Neighborhood Ass'n v. Macon-Bibb Planning & Zoning Commission,* 674 F. Supp. 1475 (M.D. Ga. 1987), also cited by Defendants, the district court found that 42 U.S.C. § 1988 and Rule 11 preempted a counterclaim for abusive litigation under Georgia law. *East-Bibb* was not a removal case, however, and there was no question that the district court had jurisdiction to address the preemption issue. Here, it may be that § 1988(b) preempts Greensburg's state-law claims. The preemption defense, however, does not create federal-question jurisdiction.

Defendants cited *Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875 (Pa. 2006). In *Stone Crushed*, the Pennsylvania Supreme Court found that the Bankruptcy Code preempted a Dragonetti Act claim based upon an underlying allegedly frivolous claim filed in bankruptcy court proceedings. *Id.* at 880. The court concluded that "(1) Congress evinced an intent to govern the whole field; and (2) Fed.R.Civ.P. 11 (Rule 11), 28 U.S.C. § 1927, and the Bankruptcy Code potentially provide for the equivalent protection afforded by this Commonwealth to its citizens in a Dragonetti Act claim." *Id.* (footnotes omitted). The *Stone Crushed* decision was a matter of "ordinary" preemption and does not affect the jurisdictional question at issue in this case. *Stone Crushed* illustrates, however, that state courts are able to address whether federal law preempts the state-law claims asserted in this case.

### 3. Compulsory Counterclaim

Defendants also assert that Greensburg's claims in this case are barred by Rule 13 of the Federal Rules of Civil Procedure because they were compulsory counterclaims that needed to be brought in the underlying *Wisneski v. Denning* litigation. (ECF No.

13, at 11.) A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a)(1)(A). The occurrence that was the subject matter of *Wisneski v. Denning* was Wisneski's arrest by Greensburg police officers. Greensburg's claims for abuse of process, wrongful use of civil proceedings, and conspiracy do not arise out of that occurrence. They are not compulsory counterclaims, and it would have been premature to raise them at that time because the termination of the proceedings in plaintiff's favor is an element of Greensburg's claims. Defendants' citation to the Georgia Supreme Court's decision in *Yost v. Torok*, 344 S.E.2d 414 (Ga. 1986), is not applicable to this case. Georgia law requires any abusive litigation claim to be brought as part of the litigation that creates the claim. *Id.* at 417–18. The Dragonetti Act and the Pennsylvania common law tort of abuse of process do not require the claims to be filed as counterclaims in the original litigation. *See, e.g.*, *Gentzler v. Atlee*, 660 A.2d 1378 (Pa. Super. Ct. 1995) (holding that the plaintiff stated a cause of action in a wrongful use of civil proceedings case brought by a physician against lawyer based upon an underlying malpractice suit that was dismissed).

4. Conclusion

Although resolution of the claims in this case involves some analysis of federal law, the court finds that the case does not present a pure question of law. Analysis of wrongful use of civil proceedings and the other state-law claims requires backward-looking factual determinations about the reasonableness of the underlying litigation and Defendants' primary purpose in instituting and maintaining that litigation. Due to these backward-looking factual determinations, which do not implicate the validity of a federal law or the need to resolve a conflict in federal law, the substantiality of the federal issue was not shown. The issue of preemption raised by Defendants is one of ordinary preemption and was not raised on the face of Greensburg's complaint. Greensburg's claims are not compulsory counterclaims. For these reasons, this case

does not fall into that slim category of state causes of action that arise under federal law.

### D. *Effect of Remand*

At oral argument, Defendants argued that permitting civil rights defendants who prevail to later sue for damages for wrongful use of civil proceedings under state law—rather than seeking fees and costs under § 1988(b)—would have a chilling effect on those wishing to vindicate civil rights violations. The court shares Defendants' concern. The purpose of 42 U.S.C. § 1988(b) "is to ensure effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions." *Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998). For this reason, prevailing defendants are only entitled to recover attorney's fees under § 1988(b) when "'the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). "To … assess[] attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement" of civil rights laws. *Christiansburg*, 434 U.S. at 422 (discussing the parallel attorney's fee provision in Title VII). For this reason, "'[s]imply because the district court granted the defendants' motion for summary judgment does not mean that the plaintiffs' action was frivolous' or unreasonable." *Torres-Santiago v. Municipality of Adjuntas*, 693 F.3d 230, 242 (1st Cir. 2012) (quoting *O'Neal v. DeKalb Cnty.*, 850 F.2d 653, 658 (11th Cir. 1988)). The preemption issue raised by Defendants warrants careful consideration by the state court.

In remanding this action to state court, the court is only ruling on subject-matter jurisdiction. The court makes no ruling on the merits. The Supreme Court has recognized that the state courts are capable of resolving the ordinary preemption issue and any other defense, state or federal, that Defendants raise. *See Taylor*, 481

U.S. at 63, 66. The *Stone Crushed* case is one example where state courts have found Pennsylvania's wrongful use of civil proceedings statute preempted by federal law. The parties may seek review of any state-court decision through the normal appeals process and may ultimately seek review in the United States Supreme Court.

## IV.     Conclusion

The court does not have federal-question jurisdiction over this case. Greensburg's complaint on its face does not contain any claim created by federal law, and it does not on its face necessarily raise a substantial and disputed federal issue. Defendants raised a substantial defense issue of preemption, but the court is constrained not to consider that federal issue due to the well-pleaded complaint rule. The court was not able to find support for Defendants' argument that Congress intended 42 U.S.C. § 1988(b) or Rule 11 to "completely" preempt state law for jurisdictional purposes. As noted, the term "complete preemption" in this context has a specific meaning for jurisdictional purposes. There certainly is a serious contention that ordinary preemption, i.e. field preemption, may bar Greensburg's claims. Because this court lacks jurisdiction to resolve this case, that defense issue will need to be resolved by the state court. Greensburg's motion to remand will be granted. An appropriate order will be entered.

Dated: January 8, 2015                         /s/ Joy Flowers Conti
                                                                Joy Flowers Conti
                                                                Chief United States District Judge